UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY I. HAMMOCK,                       Case No. 1:12-cv-250

         Plaintiff,                       Beckwith, J.

v.                                                             Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Mary I. Hammock filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for disability insurance benefits ("DIB") in February 2009, alleging a disability onset date of December 12, 2008 due to a combination of physical and mental impairments. After her application was denied initially and on reconsideration, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). On November 19, 2010, an evidentiary hearing was held before ALJ Robert W. Flynn. Plaintiff appeared with counsel and provided testimony; a vocational expert also

1

provided testimony. (Tr. 25-68). On December 10, 2010, the ALJ denied Plaintiff's application in a written decision. (Tr. 11-20).

Plaintiff's last insured date was June 30, 2011. Therefore, she must show that she became disabled on or before that date. The record reflects that Plaintiff was 24 years old on her alleged disability onset date. She completed her high school degree and attended college for two years at Miami University, studying early childhood education.

Plaintiff performed no substantial gainful activity between her claimed onset date through the date last insured. The ALJ determined that Plaintiff had the following severe impairments: arthritis, psoriasis, obesity, degenerative joint disease status post meniscal tear of the knees, depressive disorder, generalized anxiety disorder, headaches, and panic disorder. (Tr. 13). However, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

Plaintiff stands at 5 foot 2 inches, and is morbidly obese, weighing 256 pounds. (Tr. 32). She testified that she was fired from her last job as a pre-school assistant teacher, because she was unable to physically perform the requirements of the position, primarily due to her arthritis. (Tr. 34-35). However, her termination letter also refers to her stress level (Tr. 246). Plaintiff's disability application explains that she believes she is disabled, in part, because "chronic pain" and arthritis combined allow her to "barely move." (Tr. 156). In addition, she wrote: "My weight limits the type of work I could do. I have anxiety, and panic attacks. My allergies cause severe headaches." (*Id.*). On

2

another form, Plaintiff alleges "extreme pain, weakness and fatigue" and limited mobility. (Tr. 181). She assesses her pain level as an "8" out of 10 on a "good day," of which she alleges only 2 days per week, but as "10" out of 10 on a "bad day." (Tr. 182). In a typical day, she describes showering, dressing, cleaning, cooking and preparing meals, doing laundry, watching TV, and caring for her dog (including walks) (Tr. 189, 191). She reports shopping for groceries and personal care products, watching movies, playing cards, and going to car races. (Tr. 191-192).

The ALJ determined that Plaintiff retained the residual functional capacity to perform a limited range of sedentary work, described as follows:

> [S]he needs to avoid climbing ladders/ropes and scaffolds. The claimant can occasionally climb stairs and ramps, can occasionally balance, stoop and crouch, can frequently reach overhead, handle and finger, and should avoid kneeling and crawling. In addition the claimant can sustain moderate exposure to excessive or unexpected noises, and should avoid concentrated …exposure [to] extreme cold, irritants such as fumes, dust, odors and gases, poor ventilation, unprotected heights and moving machinery. The claimant retains the mental capacity for simple, routine and repetitive tasks that are unskilled and require low stress work in an environment that is free of fast pace and has few, if any work place changes, no interaction with the general public, occasional contact with coworkers and supervisors, and requires no tandem tasks with co-workers.

(Tr. 15).

The ALJ found that Plaintiff could not perform her past relevant work as a teacher's aide, dry cleaning associate, or office manager. (Tr. 18). However, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, based upon her age, education, work experience, and RFC. The vocational expert testified that among the jobs that Plaintiff would be able to perform

3

were occupations such as inspector or sorter. (Tr. 19). For those reasons, the ALJ determined that Plaintiff was not under a disability. (Tr. 19). The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff contends that the ALJ erred (1) by failing to give controlling weight to the opinions of treating physicians and Plaintiff's psychologist; and (2) in negatively assessing Plaintiff's credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence

4

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Statement of Errors

In this case, Plaintiff asserts that the ALJ erred: (1) by failing to give controlling weight to two treating physicians and Plaintiff's treating psychologist, all of whom

5

offered opinions that supported a disability finding; and (2) by finding Plaintiff's statements to be "not credible" to the extent that they were inconsistent with the RFC determined by the ALJ. The asserted errors impact both Steps 4 and 5 of the sequential analysis.

**1. The Weight Given to Plaintiff's Treating Physicians**

    **a. Relevant Standards**

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.; see also Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The treating physician rule requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

> The reasoning behind the rule has been stated as follows:
>
> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).

6

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley*, 581 F.3d at 409 (quoting *Wilson*, 378 F.3d at 547).

On the record presented, Plaintiff argues that the ALJ erred by failing to give the opinions of three different treating sources "controlling weight," and by failing to give "good reasons" for rejecting their opinions. The Court agrees that the ALJ failed to

7

provide a sufficiently detailed explanation for the weight he gave to the treating sources in this case. Although the harmlessness of the error in this case presents a close question, the undersigned concludes that remand is required, precisely because whether the treating sources' opinions were "patently deficient" is fairly debatable on the record presented.

### b. Analysis of the Opinions of Drs. Hunter, Ahmed, and Zarnowiecki

Dr. Theodore Hunter is Plaintiff's primary care physician, and has treated Plaintiff for virtually all of the ailments that the ALJ found to be "severe" under Step 2 of the sequential analysis. In February 2009, Dr. Hunter completed an RFC assessment[1] that refers to diagnoses of Plaintiff's arthritis in her knees, hips, shoulders, wrists and fingers, her obesity, her seasonal rhinitis, psoriasis, and her generalized anxiety with panic attacks. (Tr. 267). Presumably on the basis of those multiple diagnoses, he opines that Plaintiff cannot stand for more than 15 minutes, and can only sit for one hour. (Tr. 268). The form reflects that Plaintiff can stand/walk for not more than 2 hours intermittently throughout a workday and for no longer than 15 minutes at a time, but also states (contradictorily) that she cannot sit or stand at all. Dr. Hunter opines that Plaintiff cannot lift any weight at all (not even up to 5 pounds), and that her impairments are expected to last longer than 12 months. (Tr. 268). The ALJ succinctly rejected the 2009 assessment, giving the opinions "little weight because they clearly overstate the claimant's limitations as evidenced by the medical and objective findings." (Tr. 17). The ALJ rationalized that the RFC that the ALJ found "allows for significant limitations in

---

[1] The signature on the form is illegible, but both Plaintiff and Defendant agree, for purposes of this

postural and functional activities, which are more consistent with the medical record as a whole." (Tr. 17).

In November 2010, Dr. Hunter completed a second RFC assessment that opined that Plaintiff suffers from "marked" mental limitations in carrying out detailed instructions and in working with others. (Tr. 400). In addition, in 2010 Dr. Hunter opined that Plaintiff is unable to stand for more than 15 minutes, to sit for more than 30 minutes, that she needs to elevate her legs "most" of the time, and that she cannot work for more than one hour in an 8-hour day. (Tr. 400). The ALJ also rejected Dr. Hunter's 2010 RFC opinions. The ALJ explained that the opinions were entitled to "little weight based on Dr. Hunter's treatment, which has been conservative, and his conclusions in his treating notes that the claimant's anxiety, psoriasis and arthritis were stable." (Tr. 18).

The second treating physician whose opinion the ALJ rejected was Plaintiff's orthopedist, Dr. Ahmed, who treated Plaintiff from July through September 2010 following a fall. Dr. Ahmed performed arthroscopic knee surgery on both of Plaintiff's knees on July 20, 2010, and saw her post-operatively for follow up care. Post-surgery in November 2010, Dr. Ahmed completed a physical RFC form. Dr. Ahmed opined that Plaintiff could only sit for two hours at a time. (Tr. 396). In a section of the form inquiring the total number of hours his patient could work in a day, he circled "None" due to Plaintiff's physical conditions (Tr. 396); however, the form opines that Plaintiff is "not significantly impaired" in any psychiatric capacity. Dr. Ahmed's opinions appear to be based solely upon his assessment of Plaintiff's existing knee impairment and his belief

---

appeal, that Dr. Hunter appears to have been the author.

that she will require knee replacement in the future, as no other medical conditions are listed or discussed. (Tr. 396-397). The ALJ dismissed Dr. Ahmed's opinions in tandem with his rejection of the 2009 opinions of Dr. Hunter – on grounds that they "clearly overstate the claimant's limitations as evidenced by the medical and objective findings," and that the postural limitations determined by the ALJ "allow[ ] for significant limitations in postural and functional activities, which are more consistent with the medical record as a whole." (Tr. 17).

The ALJ never explains any medical basis for his independent determination of Plaintiff's postural limitations. Nor does the ALJ explicitly rely upon any consulting medical source for the physical portion of Plaintiff's RFC. While he notes the existence of two agency consulting opinions that "there are no severe physical impairments," he also finds that those opinions are "not supported by subsequent examination and objective findings," and therefore gives them only "some weight." (Tr. 17). Indeed, the ALJ recognizes that Plaintiff's treating rheumatologist, Dr. Greenblatt, noted "radiological evidence of tricompartmental osteoarthritic changes bilaterally." (Tr. 16).

The third and last treating source opinion that the ALJ considered was that of Plaintiff's clinical psychologist, Susan Zarnowiecki, Ph.D. Dr. Zarnowiecki completed a mental RFC form on November 17, 2010 in which she indicated that Plaintiff was "moderately impaired" in her abilities to understand, remember and carry out detailed instructions, to work with others, to interact appropriately with the general public, and to accept supervision. In the narrative "comments" section, Dr. Zarnowiecki wrote:

> Mary was seen for outpatient psychotherapy 13x from 9/09 through 4/10. She was on multiple medications for pain (arthritis and psoriasis). I

> treated her for depression, panic attacks, and family conflicts. There were interruptions in therapy due to insurance issues/lapses. In my opinion, it would be difficult for Mary to manage job demands. I cannot comment on Medical Assessment details. She regularly complained of pain, sometimes being unable to leave her house. No testing was done.

(Tr. 399).

The ALJ gave Dr. Zarnowiecki's opinion "some weight since it was based on a treating relationship and does not indicate significant/severe mental health limitations." (Tr. 18). However, the ALJ rejected as "conclusory" the portion of Dr. Zarnowiecki's opinion that suggested it would be "difficult for the claimant to manage job demands." (*Id.*). The ALJ did not specifically discuss any inconsistencies between Dr. Zarnowiecki's opinions and the mental health assessment completed by consulting examiner Dr. Chiappone, but nonetheless determined that Dr. Chiappone's opinions were entitled to "great weight." In contrast to Dr. Zarnowiecki, the ALJ found Dr. Chiappone's opinions to be "well supported by the limited clinical findings, the claimant's stable symptoms with medication and her activities of daily living, which indicate a greater level of functioning than alleged by the claimant." (Tr. 17).

### c. Remand Required Due to Failure to Provide "Good Reasons"

The undersigned concludes that remand is required based upon the ALJ's failure to provide sufficiently detailed reasons for rejecting the opinions of Plaintiff's treating physicians prior to formulating Plaintiff's physical and mental RFC. For example, with respect to the ALJ's rejection of Dr. Hunter's 2010 opinions, Plaintiff persuasively argues that commentary that a patient's condition is "stable" tells almost nothing about the limitations caused by that condition. A quadriplegic person might have a "stable"

medical condition but still be rendered physically disabled under applicable guidelines. In fact, at least one of Dr. Hunter's notes reflects that Plaintiff's anxiety level is "unchanged" and as a result increases her psychiatric medication, suggesting that her arguably "stable" condition is severe enough to require additional treatment. (Tr. 392).

Nor does the ALJ's conclusion that Dr. Hunter has treated Plaintiff "conservatively" –standing alone and without explanation – provide a sufficient basis on which to reject his opinions. Defendant acknowledges that the ALJ fails to explain what is meant by the reference to "conservative treatment," but argues that the ALJ implicitly must have considered Dr. Hunter's records as a whole in rejecting his opinions concerning both Plaintiff's mental limitations (which Dr. Hunter described as "marked" in some areas) and her physical limitations. Defendant suggests that the ALJ could have rejected Dr. Hunter's mental limitations because he is not a mental health specialist. (Doc. 12 at 12). However, that basis was not articulated by the ALJ. In general (with the exception of the harmless error standard), it is inappropriate for this Court to affirm on grounds not articulated by the ALJ. The ALJ's broad reference to the record as a whole, without specific discussion of why he considered Dr. Hunter's opinions to be not supported by that record, does not satisfy the "good reasons" standard. In addition, the ALJ's apparent failure to recognize that the 2009 RFC form was authored by Dr. Hunter requires remand, because the ALJ does not appear to have adequately considered that opinion as originating from a treating source.

The rejection of Dr. Ahmed's opinions also requires further analysis on remand, in part because the ALJ never explains precisely which "medical and objective findings"

12

provide a basis for rejection. The Defendant suggests that by limiting Plaintiff to sedentary work, the ALJ adequately accommodated Plaintiff's limitations. However, the ALJ never explains the basis for the postural limitations that he imposes, as opposed to the postural limitations suggested by Plaintiff's treating physicians.

Defendant argues that the ALJ's reasons were adequately articulated, based upon the ALJ's fleeting reference to clinical examination records that reflected essentially normal findings. (Tr. 16-18). Defendant contends that the ALJ's allusion to those records, in a portion of the opinion that precedes the summary rejection of Dr. Hunter's and Dr. Ahmed's opinions (Tr. 16), is sufficient to support the determination that the opinions "overstate[d] the claimant's limitations as evidenced by the medical and objective findings." (Tr. 17). Defendant notes that a number of Dr. Hunter's clinical records fail to include any *specific* findings regarding Plaintiff's physical limitations. Likewise, following her knee surgeries, one of Dr. Ahmed's records documents improvement, noting that Plaintiff had a good range of motion. (Tr. 368).

The difficulty with Defendant's argument is that the ALJ's analysis falls well short of the level of detail or specificity suggested by Defendant in this appeal. Additionally, Plaintiff's medical records do not unequivocally support the ALJ's decision as Defendant implies. (*See, e.g.,* Tr. 384, reporting arthritis as "still hurting" and inability to see rheumatologist due to lack of insurance; Tr. 391, listing significant pain medications, reporting increase in post-surgical knee pain after cortisone shot; Tr. 361, 365, 366, reflecting decreased range of motion; Tr. 328, noting decreased range of motion in shoulders and knees). While a portion of the ALJ's decision briefly alludes to a handful

13

of records, the ALJ's rejection of the treating physicians' opinions (one of which is seemingly not recognized as from Dr. Hunter) is extremely cursory, and not tied with any specificity to the medical records.

Arguably, the ALJ's more detailed analysis of Dr. Zarnowiecki's mental limitations comes closer to satisfying the "good reasons" standard than does his rejection of the opinions of Drs. Hunter and Ahmed. Dr. Zarnowiecki's mental RFC opinions were largely adopted by the ALJ, although the ALJ indicated that he more heavily relied upon the opinions of state agency psychologists and the opinion of Dr. Chiappone.[2] The latter opined that Plaintiff was only moderately impaired in her abilities to maintain concentration and attention, and to relate to co-workers, supervisors and the public. (Tr. 16, 18).

Plaintiff argues that Dr. Zarnowiecki should have been recontacted to determine what she meant by opining that "it would be difficult for Mary to manage job demands," but the undersigned does not agree. That particular "opinion" does not profess that Plaintiff cannot work at all, but only that Plaintiff would experience some "difficult[y]." An ALJ is required to re-contact a treating source only when records are inadequate to determine disability. *See Ferguson v. Com'r of Soc. Sec.*, 628 F3d 269, 274 n.2 (6th Cir. 2010)(citing 20 C.F.R. §404.1512(e)). That was not the case here. On the other hand, the record is somewhat ambiguous concerning whether Dr. Zarnowiecki's "opinion" about Plaintiff's difficulty in managing "job demands" was in reference to

---

[2]Plaintiff argues that Dr. Chiappone's assessment of Plaintiff's Global Assessment of Functioning ("GAF") score of 51 was consistent with more severe mental limitations than determined by the ALJ. This argument is unpersuasive, because it relies upon a lower GAF score range of 41-50, and because the

14

Plaintiff's alleged panic attacks. The record also is unclear as to whether the ALJ fully considered the impact of that particular symptom.

A treating physician's opinion that is not "well-supported" is not entitled to controlling weight, but the ALJ's analysis here – particularly with respect to the opinions of Drs. Hunter and Ahmed- is simply too cursory to satisfy the "good reasons" standard. Having determined that the analysis does not satisfy the "good reasons" standard, this Court must determine whether the error was harmless, to the extent that the opinions themselves were "so patently deficient that the Commissioner could not possibly credit" them. *Blakley*, 581 F.3d at 409 (quoting *Wilson*, 378 F.3d at 547). Although the records cited by Defendant counter the opinions rendered by Drs. Ahmed and Hunter, as the undersigned has already noted, other records are more supportive. Therefore, and mindful of the strong emphasis that the Sixth Circuit has placed upon the "good reasons" standard*, see Rogers v. Com'r of Soc. Sec.*, 486 F.3d 234, 242-243 (6th Cir. 2007), the undersigned concludes that this is not a case in which all three treating source opinions rejected by the ALJ are so "patently deficient" as to render any error harmless. Accordingly, remand is required. Because remand is already required for further explanation of the ALJ's rejection of the physical limitations proffered by Plaintiff's two treating physicians, the ALJ also will be directed to reconsider the impact of Plaintiff's alleged panic attacks in the context of Plaintiff's ability to manage job stress and/or the demands of the workplace.

---

GAF score is not the *sine qua non* in the context of determining disability. *See Howard v. Com'r of Soc.*

### 2. Credibility Assessment

In her second claim of error, Plaintiff contends that the ALJ improperly evaluated her credibility. An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004). However, while an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Com'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at * 13 (S.D. Ohio April 14, 2008) (Beckwith, J; Hogan, M.J,, citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963)).

Here, Plaintiff complains that in contrast even to Dr. Chiappone, the ALJ determined that Plaintiff's reported symptoms were "not credible." Dr. Chiappone noted that Plaintiff "appeared motivated" to participate in the consulting evaluation, "put forth

---

*Sec.*, 276 F. 3d 235, 241 (6th Cir. 2002).

16

good effort and persistence" and "did not appear to exaggerate or minimize her complaints." (Tr. 271).  Dr. Chiappone specifically noted Plaintiff's report of *daily* panic attacks "during which she sweats and sometimes…vomits," and opined that Plaintiff's reported history "appeared to be accurate, credible and consistent." (*Id.*).

Another non-examining consultant, Mel Zwissler, Ph.D., also noted that Plaintiff had been diagnosed with panic disorder, and that Plaintiff's symptoms "may become exacerbated when faced with stressors." (Tr. 293).  On that basis Dr. Zwissler indicated that Plaintiff "would perform best in an environment that is void of strict time and production standards." (Id.).  Dr. Zwissler, like Dr. Chiappone, pronounced Plaintiff's statements regarding her symptoms to be "credible." (*Id.*).

Notwithstanding the assessments of Drs. Chiappone and Zwissler, the ALJ found that the record does not substantiate Plaintiff's reports that she suffers from daily panic attacks.  (Tr. 17).  The Defendant argues that the ALJ's conclusion can be affirmed based upon the lack of reference to "daily panic attacks" in most of Plaintiff's records.  However, while not described as a "daily" occurrence, Dr. Hunter's records contain multiple references to Plaintiff's panic attacks and associated psychological symptoms. (*See, e.g.*, Tr. 371, noting panic attacks three times per week; Tr. 384, noting panic attacks "worse"; Tr. 391, noting continued "outbursts" and lack of treatment due to insurance coverage; Tr. 392, prescribing increase in paxil due to anxiety level).  The ALJ appears to have dismissed not only Plaintiff's report of "daily" panic attacks, but the possibility that Plaintiff suffers from such attacks at all.  Without discussing any specific evidence relating to her panic attacks, the ALJ simply states:  "The claimant alleged

17

daily panic attacks…[but] the record does not support her allegation." (Tr. 17).

The Defendant concedes the notation that Plaintiff reported panic attacks occurring three times per week to Dr. Hunter, but argues that "this reduced level of panic attacks also lacks support." (Doc. 12 at 18). However, the ALJ failed to cite *any* medical evidence to support his conclusion that Plaintiff does not suffer from panic attacks. It is inappropriate for this Court to speculate on the basis for the ALJ's decision in light of his failure to discuss relevant medical records, particularly in light of the vocational expert's testimony in this case that panic attacks of "more than once or twice a month" would present an "*insurmountable* work problem." (Tr. 65-66, emphasis added).

In sum, a close review of the record confirms some inconsistencies between Plaintiff's complaints of disabling pain and weakness, and incapacitating anxiety and depression, and her report of daily activities and treatment records. However, remand is required because other records support the opinions offered by three treating sources, and ultimately provide at least some support for Plaintiff's claim. While this is not a case in which an award of benefits is clearly required, this Court cannot simply ignore the ALJ's failure to adequately explain the rationale for his decision.

### III. Conclusion and Recommendation

A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four

18

remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits should be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g);

2. Consistent with this R&R, the ALJ should reevaluate: a) the weight to be given to each treating source opinion; and b) Plaintiff's credibility, including but not limited to her allegation that she suffers from frequent panic attacks.

3. As no further matters remain pending for the Court's review, this case should be **CLOSED**.

                                               *s/ Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MARY I. HAMMOCK,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:12-cv-250

Beckwith, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).